Filed 3/1/22  P. v. Patterson CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER HARVELL PATTERSON,<br><br>Defendant and Appellant. | F080687<br><br>(Kern Super. Ct. No. BF143850A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Victor J. Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Detjen, Acting P. J., Franson, J. and Peña, J.

## INTRODUCTION

In 2013, appellant and defendant Christopher Harvell Patterson was convicted, after a jury trial, of first degree premeditated murder with a special circumstance and sentenced to life in prison without possibility of parole. In 2019, defendant filed a petition for resentencing pursuant to Penal Code[1] section 1170.95 and alleged his murder conviction was based on the felony-murder rule or the natural and probable consequences doctrine. The court denied the petition.

On appeal, his appellate counsel has filed a brief which summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) We affirm.

## FACTS[2]

"[O]n August 19, 2012, defendant, a member of the Eastside Crips criminal street gang, was seated on a planter just outside a grocery store when 71-year-old Guadalupe Ramos walked from the store to her daughter's car a short distance away in the parking lot. Defendant grabbed Ramos from behind and pulled a gold chain from around her neck knocking her to the pavement in the process and causing her to hit her back and head. Defendant then ran out of the parking lot and was picked up in a vehicle by fellow gang members McDonald and Slaughter. The vehicle, which had been in the grocery store parking lot for several minutes before Ramos was accosted, then sped off.

"Ramos was taken to the hospital. She was pronounced dead a short time later. The forensic pathologist who performed the autopsy stated the cause of death as 'emotion

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] On July 21, 2020, defendant requested this court take judicial notice of the record in his first appeal, *People v. Patterson* (June 9, 2015, F068508). On July 27, 2020, this court deferred ruling on this request pending review of the matter on the merits.

We grant defendant's request and take judicial notice of this court's records in that case. (See Evid. Code, §§ 450, 452, subd. (d), 459; *In re W.R.* (2018) 22 Cal.App.5th 284, 286–287, fn. 2.)

stress by precipitated sudden cardiac death due to marked excitation and emotional stress associated with physical exertion during robbery confrontation,' and 'cardiac dysrhythmia or irregular heartbeat associated with blunt force trauma to the trunk and the extremity.' " (*People v. Patterson*, *supra*, F068508 [nonpub. opn.] at pp. 2–3)

## **PROCEDURAL BACKGROUND**

On or about June 11, 2013, an information was filed in the Superior Court of Kern County charging defendant with count 1, first degree premeditated murder (§ 187, subd. (a)) with the special circumstance that the murder was committed in the perpetration or attempted perpetration of a robbery (§ 190.2, subd. (a)(17)); count 2, second degree robbery (§ 212.5, subd. (c)), with a great bodily injury enhancement (§ 12022.7, subd. (a)); and count 3, active participation in a criminal street gang (§ 186.22, subd. (a)), with a prior prison term enhancement (§ 667.5, subd. (b)).[3]

On October 16, 2013, defendant was convicted of all counts, and the jury found true the robbery-murder special circumstance and the great bodily injury enhancement. The court found true the prior prison term enhancement (§ 667.5, subd. (b)).[4]

On November 19, 2013, the court sentenced defendant to life imprisonment without possibility of parole for first degree murder with a special circumstance, plus one year for the prior prison term enhancement, and a consecutive upper term of three years for count 3, active participation in a criminal street gang.

---

[3] Defendant originally was jointly charged with Lawrence Slaughter and Maxamillion Lee McDonald, but their cases were severed. (*People v. Patterson*, *supra*, F068508, at p. 2, fn. 2.)

[4] During trial, the court dismissed the allegations that the murder was committed by means of lying in wait (§ 189), and the lying-in-wait special circumstance (§ 190.2, subd. (a)(15)). The jury was unable to reach verdicts on gang enhancements attached to counts 1 and 2 (§ 186.22, subd. (b)(1)), and the allegations were dismissed on the prosecutor's motion. The prosecution did not seek the death penalty. (*People v. Patterson*, *supra*, F068508, at p. 2 & fn. 2.)

**Defendant's First Appeal**

On June 9, 2015, this court filed the opinion in defendant's first appeal. We rejected defendant's argument that his change of venue motion should have been granted. We agreed with the parties that the consecutive term of three years imposed for count 3 should have been stayed pursuant to section 654 and modified the judgment accordingly. (*People v. Patterson*, *supra*, F068508, at p. 2.)

On September 29, 2015, the trial court amended the abstract of judgment to reflect the term imposed for count 3 was stayed.

## SENATE BILL NOS. 1437 & 775

The instant appeal is from the denial of defendant's petition for resentencing that he filed pursuant to Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), that was effective on January 1, 2019, and amended " 'the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person *who is not the actual killer*, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 959, italics added (*Lewis*).)

"Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723; *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

"In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief. [Citation.]" (*Lewis, supra*, 11 Cal.5th at p. 959.)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the

4.

petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' [Citation.] If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' [Citation.]" (*Lewis, supra*, 11 Cal.5th at pp. 959–960.)

"Where the petition complies with [section 1170.95,] subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. [Citation.] [¶] If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not … previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' [Citation.]" (*Lewis, supra*, 11 Cal.5th at p. 960.)

**Lewis**

In *Lewis*, the court interpreted the provisions of section 1170.95 and held that petitioners "are entitled to the appointment of counsel upon the filing of a facially sufficient petition [citation] and that only *after* the appointment of counsel and the

opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' [Citation.]" (*Lewis, supra*, 11 Cal.5th at p. 957.) *Lewis* held the language of section 1170.95, subdivision (c) "is mandatory: 'If the petitioner has requested counsel, the court *shall* appoint counsel to represent the petitioner.' [Citation.]" (*Lewis, supra*, 11 Cal.5th at p. 963, italics added in original.) The court's failure to appoint counsel only constitutes state error subject to review under *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis, supra*, 11 Cal.5th at p. 973.)

*Lewis* also held that "at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Lewis, supra,* 11 Cal.5th at p. 974.) When the court conducts the prima facie determination, section 1170.95, subdivision (b)(2) only permits screening out "noncomplying petitions, not petitions that lack substantive merit." (*Lewis, supra*, 11 Cal.5th at p. 968.)

*Lewis* further held that after appointing counsel, the trial court could rely on the record of conviction to determine whether the prima facie showing is made "to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at p. 971.) The record of conviction includes a prior appellate opinion, although it will be case-specific. (*Id.* at p. 972.) The prima facie finding under section 1170.95, subdivision (c) is limited, and the court must accept the petitioner's factual allegations as true and cannot reject the allegations on credibility grounds without conducting an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at p. 971.) " 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]" (*Ibid.*) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding

involving the weighing of evidence or the exercise of discretion.' [Citation.] [T]he 'prima facie bar was intentionally and correctly set very low.' " (*Lewis, supra*, 11 Cal.5th at p. 972.)

**Senate Bill No. 775**

In October 2021, Senate Bill No. 775 was enacted and amended section 1170.95, effective on January 1, 2022. (2020–2021 Reg. Sess.; Stats. 2021, ch. 551, § 1 (Senate Bill 775).) As a result of the amendments, section 1170.95 clarified that "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances. (§ 1170.95, subd. (a).)

The amendments also codified the holding in *Lewis* that a petitioner has the right to appointment of counsel, if requested, prior to the court making the prima facie finding: "Upon receiving a petition in which the information required by this subdivision is set forth …, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1170.95, subd. (b)(3).) After appointment of counsel, the parties shall have the opportunity to submit briefing, and "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1170.95, subd. (c).)

If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so. (§ 1170.95, subd. (c).) If the court issues the order to show cause and conducts a hearing, the prosecution has the burden to prove beyond a reasonable doubt that petitioner is guilty of murder or attempted murder under the amended versions of sections 188 and 189. (§ 1170.95, subd. (d)(3).)

"The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder … is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3), as amended by Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.)

## DEFENDANT'S SECTION 1170.95 PETITION

On April 24, 2019, defendant filed, in pro. per., a petition in the superior court for resentencing pursuant to section 1170.95. Defendant requested appointment of counsel.

The petition was supported by appellant's declaration, signed under penalty of perjury, where he checked boxes on a preprinted form that stated he was entitled to resentencing under section 1170.95 because a complaint or information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; at trial, he was convicted of first or second degree pursuant to the felony-murder rule or the natural and probable consequences doctrine; and he could not now be convicted of first or second degree murder under the amended versions to sections 188 and 189.

Defendant also filed a written declaration, stating that he never intended to harm the victim, there was no premeditation or reckless indifference to life, the crime happened during a "spur of the moment decision," and there were no weapons or threats of violence

used during the incident. Defendant further declared that the pathologist stated the victim suffered from a medical condition that affected her lungs, and the excitement from the incident elevated her breathing pattern and ultimately caused her death. Defendant asserted that the victim's death was a "tragic accident," the medical staff could have saved her life, and he "did not commit the crime in question." Defendant argued there was no evidence he inflicted great bodily injury, the victim's fall was not related to his crime of "chain snatching," and his offense was not inherently dangerous to human life.

**Defendant's Briefing**

On May 3, 2019, the court appointed counsel to represent defendant.

On June 11, 2019, defendant's counsel filed a brief and argued Senate Bill No. 1437 was constitutional.

**The Prosecution's Opposition**

On July 2, 2019, the prosecution filed opposition to defendant's petition, cited to this court's opinion from his first appeal, and asserted he was ineligible for relief under section 1170.95 because he was the actual killer.

The prosecution also challenged defendant's declaration that he did not act with premeditation and the victim's death was a "tragic accident."

> "Trial evidence and the conviction shows the statement is not true. The People request the court review the surveillance video shown to the jury at trial. The surveillance footage from the front of Foodsco shows [defendant] seated on the planter reviewing each person passing. Ultimately, he observes Guadalupe Ramos pass by, pauses a moment, looks around prior to following her, and finally comes up behind her to rob the chain. The defendant was convicted [of] robbery and personal infliction of great bodily of Guadalupe Ramos. The jury verdict directly counters [defendant's] claim it was a tragic accident, the jury found the defendant personally inflicted great bodily injury to Mrs. Ramos during a robbery."

On November 5, 2019, the prosecution filed supplemental opposition and argued defendant was not eligible for relief under section 1170.95, even if the prosecution proceeded under the theory of felony murder, because he was the actual killer. The

prosecution further argued defendant did not present any evidence of medical negligence that led to the victim's death.

**The Court's Denial of the Petition**

On November 8, 2019, the court issued a tentative ruling that defendant failed to make a prima facie case for relief under section 1170.95 because the record showed he was the actual killer. The court granted defense counsel's motion to continue the matter so he could consult with defendant.

On January 23, 2020, the court held a hearing on defendant's petition. The court noted defense counsel had filed a brief that argued section 1170.95 was constitutional, but the prosecution did not challenge the statute. Defense counsel conceded his brief on the constitutional issue was moot.

The court reviewed the jury instructions from defendant's trial and this court's opinion from his first appeal. The court stated the evidence and instructions submitted to the jury were based on the theory that defendant was the actual killer. The court invited argument. Defense counsel objected, but submitted the matter without argument, introducing contrary evidence, or requesting a further hearing.

The court adopted its tentative ruling and held defendant failed to state a prima facie case for relief because he was the actual killer and denied his section 1170.95 petition.

On January 27, 2020, defendant filed a timely notice of appeal.

## DISCUSSION

As noted above, defendant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that defendant was advised he could file his own brief with this court. By letter on January 21, 2020, we invited defendant to submit additional briefing. To date, he has not done so.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.[5]

## <u>DISPOSITION</u>

The judgment is affirmed.

---

[5] As required by *Lewis* and section 1170.95, the court appointed counsel to represent defendant, held a hearing on the petition and invited argument from both parties, and the defense failed to introduce any evidence. The superior court properly relied on the record and this court's opinion from his first appeal to find he was the actual killer and deny the petition. (See, e.g., *Lewis, supra*, 11 Cal.5th at pp. 971–972.)